**KENTUCKY BAR ASSOCIATION, Complainant,**

**v.**

**L. M. Tipton REED, Jr., Respondent.**

Supreme Court of Kentucky.

Nov. 3, 1981.

Reconsideration Denied Nov. 24, 1981.

Leslie G. Whitmer, Director, Michael M. Hooper, Asst. Director, Kentucky Bar Association, Frankfort, for complainant.

## OPINION AND ORDER

The following decision of the Board of Governors of the Kentucky Bar Association is hereby adopted pursuant to and in conformity with SCR 3.370(8):

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF BOARD OF GOVERNORS OF KENTUCKY BAR ASSOCIATION

Respondent, L. M. TIPTON REED, JR., is charged herein with having engaged in unprofessional conduct calculated to bring the Bench and Bar into disrepute. The Charge made by the Inquiry Tribunal of the Kentucky Bar Association consists of three separate counts which have to do with the conduct and activities of Respondent in his representation, or lack of representation, of certain clients in matters entrusted to him. Neither the clients nor those matters in which Reed purported to represent them are in any way related, and the Board's Findings shall thus be made separately with respect to each matter entrusted to Respondent, and each case shall be identified by reference to the name of Respondent's client therein.

Respondent was duly notified of the charge made herein pursuant to SCR 3.200 and he has filed no Answer or Response of any kind. Thus, this proceeding has come before the Board for its determination pursuant to SCR 3.210, and for Findings, Conclusions and Order required by SCR 3.370.

The Board finds, upon thorough examination of the record and investigative file herein, that the following facts regarding Respondent's conduct have been established:

## THE BATES CASE

In 1976, one Larry Bates of Martin, Tennessee, employed Respondent to represent him in a claim by which Bates sought compensation both in the form of unpaid rent due him from a tenant, and for certain damages caused by that tenant to real estate and improvements owned by Bates. The total monetary claim which was to have been asserted upon behalf of Bates amounted to approximately $10,500.00 and, although Respondent acknowledged his representation of Bates and assured Bates that appropriate legal action would be undertaken in this matter, Respondent subsequently neglected or failed to pursue upon behalf of Bates any legal remedy, despite the fact that the prospective Defendant appeared initially to have assets subject to execution located within this Commonwealth from which any Judgment against him might be satisfied.

From December, 1976, through March, 1978, Respondent represented to Bates that he was diligently pursuing Bates's claim when, in fact, Respondent had done essentially nothing toward the prosecution of that claim.

During and before 1978, Bates undertook on numerous occasions to contact Respondent both by telephone and by written correspondence in order to learn the status of his case, but Respondent then refused or neglected to respond to those inquiries made by Bates. Finally, on or about March 23, 1979, Bates advised Respondent in writing that he was being discharged in the matter, and directed Respondent to deliver his file to another attorney who had been employed by Bates. Respondent thereafter refused to acknowledge this correspondence, and further refused to make any effort to transfer the Bates file to his new counsel. By the time of his discharge in 1979, the person against whom Bates would have asserted this claim for monetary damage had removed both himself and his assets from the Commonwealth of Kentucky.

## THE HORTON CASE

In August, 1975, there was filed in the Carlisle Circuit Court a Complaint upon behalf of Beatrice Redford against Beth Ellis Horton and others, which Complaint alleged that Beth Ellis Horton, while acting as Attorney-In-Fact for Beatrice Redford, appropriated and converted to her own use certain properties belonging to Beatrice Redford. Respondent was employed by Beth Ellis Horton and William Horton, her husband, to represent her interests in this Carlisle Circuit Court litigation.

In November of 1975, and after the death of Beatrice Redford, her personal representative was substituted as a party-Plaintiff in this subject lawsuit, and Respondent then undertook certain settlement negotiations with counsel for Plaintiff therein. Thereafter, Respondent, without any authority from his clients, and without informing them of his activities with regard to a prospective settlement of this case, entered into an agreement whereby that case was to be settled upon the payment by Respondent's clients of certain sums of money agreed upon among counsel.

The settlement agreement referred to hereinabove was never carried forth and, in late 1977, substitute counsel undertook the responsibility for representing the Plaintiffs in that litigation. Thereafter, in early 1978, Respondent and that new attorney conferred about the case, and Respondent entered into certain agreements upon behalf of his client by which the value of certain assets acquired by Beth Horton from Beatrice Redford was fixed. Again, Respondent failed to communicate with his clients in any way about these settlement negotiations and the agreement reached as a result thereof.

Thereafter, in October, 1978, counsel for Plaintiff in this lawsuit filed and served upon Respondent a Motion for Summary Judgment. Respondent did not advise his clients of the pendency of said Motion and did not respond in any way thereto, with the result that Summary Judgment was entered against Respondent's clients on or about December 14, 1978.

In January, 1979, certain property of Beth Horton was levied upon for the pur-

pose of satisfying that Judgment entered against her during the preceding month. Beth Horton then went to Respondent for some explanation, and then learned for the first time that a Judgment had been entered against her in the Carlisle Circuit Court. Respondent further assured his client that this Judgment had been entered by mistake, and that he would undertake immediate steps to have that Judgment set aside. Respondent thereafter took no further steps by way of challenge to the Summary Judgment entered against his client.

In late 1979, Plaintiff's counsel attempted to take the deposition of Beth Horton for the purpose of discovering the nature and extent of her assets. Respondent agreed to the taking of his client's deposition on three separate dates, and immediately prior to each of said dates Respondent would request from Plaintiff's counsel that the deposition be rescheduled, even though Respondent had never notified his client that such deposition had been scheduled. In January, 1980, Plaintiff's counsel noticed the deposition of Beth Horton for January 29, 1980, and Respondent again failed to inform his client that her deposition had been scheduled upon that date. On January 29, 1980, Plaintiff's counsel appeared at the law office of Respondent for the purpose of taking the deposition of Beth Horton, and Respondent then misrepresented to counsel that he had instructed his client to appear but that she had failed to do so.

Again on March 4, 1980, Plaintiff's counsel noticed the deposition of Beth Horton for March 12, 1980, and Beth Horton was then served with a subpoena compelling her to appear and give her deposition. That deposition was taken as scheduled and, during the course thereof, Respondent promised to provide Plaintiff's counsel with certain documents and information, all of which he thereafter failed to furnish, despite repeated requests by Plaintiff's counsel that he do so.

In May of 1980, Plaintiff's counsel undertook certain contempt proceedings against Beth Horton and, at a hearing in the Carlisle Circuit Court on May 13, 1980, at which time both Respondent and Beth Horton were present, Respondent again reiterated in the presence of his client that Summary Judgment theretofore entered against his client was erroneous, and that he intended to file a Motion and supporting Brief in an effort to have his client relieved of the effect of that Summary Judgment. Respondent thereafter failed or neglected to file any such Motion in the Carlisle Circuit Court action.

On October 29, 1980, Beth Horton filed a Complaint against Respondent with the Kentucky Bar Association. Respondent, by correspondence of November 14, 1980, such correspondence having been made in response to the Complaint of Beth Horton, falsely stated that he had filed in the Carlisle Circuit Court a Motion to modify the Summary Judgment entered against his client when, in fact, no such Motion had been filed.

## THE CULP CASE

In the summer of 1974, Harry H. Culp, Gilbertsville, Kentucky, employed Respondent to represent Culp in a Workmen's Compensation proceeding. In August of 1974, Respondent prepared and filed with the Kentucky Workmen's Compensation Board an application for adjustment of claim of Harry Culp, said application naming as the Defendant therein the George Jacobs Beverage Company.

In September of 1974, Respondent filed a formal Motion before the Board asking that this claim be held in abeyance on the ground that Respondent and representatives of the Defendant-employer were attempting to negotiate a settlement. That Motion was sustained and the claim was held in abeyance from September, 1974, through June, 1976. During that period of nearly two years, Respondent assured his client on numerous occasions that he was engaged in constructive settlement negotiations with the insurance carrier for the Defendant-employer when, in fact, Respondent had done essentially nothing toward attempting a settlement of his client's claim.

In the early summer of 1976, Harry Culp became concerned about his case and attempted to contact Respondent by telephone in an effort to receive a status report thereupon. Respondent failed and refused to return the calls of his client, who then consulted with another attorney and, as a result of this conference, Culp ultimately met with Respondent on June 9, 1976. Respondent then assured Culp that he would move forward with the prosecution of Culp's claim, and on June 11, 1976, Respondent did move the Board to schedule a hearing on that claim.

Thereafter, a hearing was scheduled on this claim for August 10, 1976, and, although notice of that hearing was given Respondent, he failed to appear at the hearing. On August 19, 1976, Respondent moved the Board to reschedule that hearing, although that Motion was not accompanied by any explanation for Respondent's failure to appear at the August 10, 1976 hearing. On August 23, 1976, the Board overruled that Motion and required Respondent and his client to complete the proof in the case by deposition within 30 days.

Respondent did then complete the proof necessary to permit the Board to make a determination in this case, and the Board ultimately determined, in June of 1977, that Harry Culp was entitled to certain benefits. The Defendant-employer and the Special Fund appealed the decision of the Board to the McCracken Circuit Court and, on or about June 28, 1978, the McCracken Circuit Court affirmed the decision of the Board. The Defendant-employer and the Special Fund thereafter appealed that decision to the Court of Appeals of Kentucky. On March 2, 1979, the Court of Appeals of Kentucky rendered an Opinion upholding the right of Harry Culp to receive certain benefits, and directing that the claim be remanded by the Circuit Court to the Board for further proceedings which involved the making of appropriate calculations of benefits due. Respondent failed to take any action to have entered in the McCracken Circuit Court an appropriate Order carrying forth the Mandate of the appellate Court, and there was no activity in the case until

November 15, 1979, when counsel for the Defendant-employer submitted to the McCracken Circuit Court an Order remanding the claim to the Board for further proceedings. That Order was ultimately entered and the matter was thus remanded to the Board.

On January 2, 1980, the parties stipulated certain information pertaining to the wages earned by Harry Culp from the Defendant-employer, and this stipulation ultimately brought about, on February 11, 1980, a Supplemental Opinion and Order from the Board by which Culp became entitled to those benefits set forth therein.

Harry Culp subsequently received checks representing benefits due him to and including May 7, 1980, immediately after which Respondent filed with the Board a Motion to commute the remaining benefits owed Culp to a lump sum. That Motion was sustained so that, on or about June 18, 1980, the insurance carrier for the employer terminated the payment of weekly benefits in anticipation of the making of a lump-sum settlement payment. That insurance carrier, and its counsel, determined that, in order that a lump-sum settlement be paid to Harry Culp, the Respondent's attorney fee would have to be fixed and approved by the Board. Thus, on or about June 17, 1980, counsel for the Defendant-employer wrote to Respondent and requested that he move the Board for approval of his fee. Respondent did not reply to that letter, nor did he file such a Motion with the Board.

On August 8, 1980, a claims representative of the insurance carrier for the employer wrote to the Board and advised that the lump-sum settlement approved by the Board could not be paid until the Board had approved Respondent's attorney fee. Respondent received a copy of that letter but did not respond in any way thereto. On September 23, 1980, Hon. Michael M. Hooper, Assistant Director of the Kentucky Bar Association, wrote to Respondent requesting that he immediately move the Board for an attorney's fee in the Culp case and in order that Culp's claim might be finally

**232**

settled. Respondent made no reply to the letter of Mr. Hooper, nor did he take any action before the Board.

Thereafter, and as of the date of the Board's consideration of this matter, Respondent had apparently continued to refuse and neglect to undertake appropriate steps to either have an attorney's fee approved by the Board or to waive entitlement to such fee, in order that his client, Harry Culp might receive the lump-sum balance due him in this claim.

In accordance with and by reason of all of the foregoing facts, the Board of Governors concludes that Respondent's conduct in willfully neglecting matters entrusted to him, and in failing to accurately represent to his clients and others both the status of these respective cases and the nature and extent of his activities undertaken in connection therewith, constitutes unprofessional and unethical conduct calculated to bring the Bench and Bar into disrepute. The Board thus recommends that Respondent be suspended from the further practice of law within this Commonwealth for a period of one year, and be ordered to pay the costs of these proceedings.

This 13th day of July, 1981.

BOARD OF GOVERNORS
KENTUCKY BAR ASSOCIATION

By /s/ Henry R. Wilhoit, Jr.
President

ATTEST:

/s/ Leslie G. Whitmer

Director, Kentucky Bar Association

PALMORE, C.J., and AKER, STEPHENS, LUKOWSKY, STEPHENSON and STERNBERG, JJ., concur.

CLAYTON, J., not sitting.

Entered November 3, 1981

/s/ John S. Palmore
Chief Justice